FELTY et al. v. VASBINDER et al.

(Circuit Court of Appeals, Fourth Circuit. May 7, 1912.)

No. 1,088.

INJUNCTION (§ 35*)—TITLE TO MAINTAIN.

An injunction to restrain defendants' trespass on certain land and the cutting of timber therefrom was properly denied, where the evidence was insufficient to make out a prima facie case of plaintiffs' ownership.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 77; Dec. Dig. § 35.*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Philippi.

Suit by Robert Felty, in his own right and as trustee, and others, against C. R. Vasbinder and others, partners trading as the Elk Lick Lumber Company. Judgment for defendants, and plaintiffs appeal. Affirmed.

J. P. Scott, of Parsons, W. Va., and W. B. Maxwell and E. L. Maxwell, both of Elkins, W. Va., for appellants.

D. H. Hill Arnold, of Elkins, W. Va. (A. Jay Valentine, of Parsons, W. Va., on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and BOYD and ROSE, District Judges.

PRITCHARD, Circuit Judge. This suit was originally instituted in the Circuit Court of Tucker county, W. Va., by Robert Felty, trustee, and a number of others, as plaintiffs, wherein it was sought to obtain an injunction against the defendants inhibiting and restraining them from the commission of further trespasses upon certain tracts of land mentioned and described in the bill of complaint, further praying that the amount and value of timber actually severed by the defendants up until the institution of said suit be ascertained and a decree entered therefor in favor of the plaintiff Robert Felty, trustee, for the benefit of the other plaintiffs, that the damage done to the residue of said tracts of land and timber by reason of the severance and removal of timber therefrom be ascertained and the defendants adjudged to pay said damage to the plaintiffs, and for general relief. On that day, the 30th of September, 1910, an injunction was awarded the plaintiffs as prayed for by them, which injunction was perfected and process served.

While this suit was instituted as an ancillary proceeding to a suit at law to settle title, yet it appears in the bill that the plaintiffs do not rely upon the suit at law, and that they depend mainly upon this suit for all the relief which they seek. On the 8th day of October, 1910, the defendants filed their bond and petition for the removal of this cause from the said Circuit Court of Tucker county, W. Va., to the Circuit Court of the United States for the Northern District of West Virginia, and an order was entered by the state court on said date transferring said cause. It also appears that on October

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

196 F.—14

10, 1910, plaintiffs sued out an attachment against the defendants which was not levied until October 12th. On October 24, 1910, defendants filed their demurrer and answer to plaintiffs' bill, and upon said date obtained partial relief from the injunction awarded by the state court in said cause. Also an order of survey was entered at that time.

Subsequent thereto depositions were taken by both parties, and on the 30th day of September, 1911, the court filed its opinion in this case, and a final decree dismissing the plaintiffs' bill was entered by the trial court, and from said decree the plaintiffs have prosecuted this appeal and have filed a number of assignments of error.

As we have stated, plaintiffs practically abandoned their suit at law, stating in the bill, among other things, that:

"Since the institution thereof the said defendants have continued their said trespass without in any way or manner being deterred by the institution of said action. That, if the plaintiffs are placed upon their election as to whether they will proceed in this action or in said action at law, they now say that they will elect to pursue this action, and in this proceeding will seek to recover the whole of the damage sustained by them by reason of the commission of said trespass."

Then there is the further question raised in the court below as to whether the state court had jurisdiction to issue an attachment in this suit after the case had been removed to the federal court. In our view of the case we do not find it necessary to consider these matters.

The learned judge who heard this case found the facts, and, among other things, determined that plaintiffs had not made out a prima facie case of ownership such as would warrant a further continuance of the restraining order, nor had the plaintiffs made out such a case as would warrant the court in granting the relief prayed for in the bill. The findings of fact in the lower court are as follows:

"In my view of this case the whole question turns on the true location of the Deakins-Arnold tract of 4,430 acres. I am clearly of the opinion that plaintiff has failed to show a forfeiture of the old Deakin grant of 1788, whereby Kalor and Marstiller acquired a superior right under their 1856 grant for 790 acres. Nor can I subscribe to the proposition that Jacob Kalor, in his own right, being in possession of other lands adjoining this land, could by such possession acquire possessory title to this 790 acres patented to himself and Marstiller jointly. Such possession would neither be in the same right, nor would it be open and notorious. Finally, I do not thing Jonathan Arnold can be held to have abandoned as the vendee of Deakins his rights under the old grant by securing the issue to himself of the patent for the 4,430 acres in 1860. His action in this particular seems to me pretty clearly to have been taken to correct the original grant which had for some reason omitted 300 acres which Deakins had had surveyed, and it was fully justified by the provisions of chapter 112, §§ 60–63, of the Code of Virginia 1860, in force at the time, and under the ruling of Jones v. Jones, 5 Va. 458, such corrected patent would relate back in right to the original. It all therefore resolves itself into the question of the true lines of the Deakins grant. There are at least 15 corners of this survey that are not disputed. The beginning corner at 1 is fixed beyond controversy. The running of the red lines from 1 to 26 is in accord with the calls of the patent both as to course (after allowance for variation) and distance substantially. Upon it are at least two trees bearing the oldest marks of any of the lines surveyed. Witness Taylor says he found a third marked tree. The line from 1 to 2, the black line claimed by the plaintiff, falls short in distance, and does not apply suf-

ficient variation, according to the great weight of the evidence, to give the true course of the line, and nothing is found to identify a line on this location. It seems clear to me that the second corner of the survey must be established at 26. This being true, it follows inevitably that the remaining disputed corners of the survey must be fixed at 27, 28, 29, 30, 31, 32, 33, 34, and 35 as laid down on the red line by Surveyor Crickard, and that the cause is for the defendants."

Under the circumstances, the only question necessary to be considered is as to whether the learned judge who tried this case in the court below erred in refusing the injunction sought by plaintiffs' bill, and in dismissing the same upon the ground that it did not disclose an equity. The court below heard the testimony, and, after considering the written and oral evidence, reached the conclusion that the plaintiffs were not entitled to the relief sought. We have carefully considered the contentions of the parties in the light of the evidence and the decisions of the Supreme Court of the state of West Virginia, and are of opinion that the ruling of the court below was proper. Such being the case, it necessarily follows that the decree of the lower court should be affirmed.

Affirmed.